# EXHIBIT A

| District Court, Arapahoe County, Colorado<br>7325 South Potomac Street<br>Centennial, CO 80112<br><br>Plaintiff: Ralph E. Machesky<br><br>v.<br><br>Defendants: National Consumer Telecom & Utilities Exchange, Inc, and Equifax Information Services, LLC) | **COURT USE ONLY** |
|---|---|
| Attorney for Plaintiff:<br>Matthew R. Osborne #40835<br>11178 Huron Street, Suite 7<br>Northglenn, CO 80234<br>Phone Number: 303-759-7018<br>E-mail: matt@mrosbornelawpc.com | Case Number:<br><br><br><br>Division:      Courtroom: |
| **DISTRICT COURT CIVIL (CV) COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT** | |

1. **This cover sheet shall be filed with each pleading containing an initial claim for relief in every district court civil (CV) case, and shall be served on all parties along with the pleading.** It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. **Check one of the following:**

   ❑ This case is governed by C.R.C.P. 16.1 because:

   - The case is not a class action, domestic relations case, juvenile case, mental health case, probate case, water law case, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding; *AND*

   - A monetary judgment over $100,000 is not sought by any party against any other single party. This amount includes attorney fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought.

   ☒ This case is not governed by C.R.C.P. 16.1 because (check ALL boxes that apply):

❏The case is a class action, domestic relations case, juvenile case, mental health case, probate case, water law case, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding.

☒ A monetary judgment over $100,000 is sought by any party against any other single party. This amount includes attorney fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought.

❏Another party has previously indicated in a Case Cover Sheet that the simplified procedure under C.R.C.P. 16.1 does not apply to the case.

*NOTE: In any case to which C.R.C.P. 16.1 does not apply, the parties may elect to use the simplified procedure by separately filing a Stipulation to be governed by the rule within 49 days of the at-issue date. See C.R.C.P. 16.1(e). In any case to which C.R.C.P. 16.1 applies, the parties may opt out of the rule by separately filing a Notice to Elect Exclusion (JDF 602) within 35 days of the at-issue date. See C.R.C.P. 16.1(d).*

❏A Stipulation or Notice with respect to C.R.C.P. 16.1 has been separately filed with the Court, indicating:

❏C.R.C.P. 16.1 applies to this case.

❏C.R.C.P. 16.1 does not apply to this case.

**3.** ❏ This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

Date: December 26, 2019                    s/Matthew R. Osborne
                                           Signature of Attorney

District Court, _____Arapahoe_____ County, Colorado
Court Address:

7325 South Potomac Street  Centennial, CO 80112

Plaintiff   Ralph E. Machesky

v.

Defendant  National Consumer Telecom & Utilities Exchange, Inc, and
            Equifax Information Services, LLC.

▲   **COURT USE ONLY**   ▲

Case Number:

Division:        Courtroom:

## DISTRICT COURT CIVIL SUMMONS

**TO THE ABOVE NAMED DEFENDANT:** National Consumer Telecom & Utilities Exchange, Inc, and
Equifax Information Services, LLC.

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated: ___December 26, 2019___

s/Matthew R. Osborne
ttorney for Plaintiff

11178 Huron Street, Suite 7

Northglenn, CO 80234
Address of Attorney for Plaintiff

303-759-7018
Attorney's Phone Number

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

**TO THE CLERK:** If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

JDF 600  R10-13   DISTRICT COURT CIVIL SUMMONS
©2013 Colorado Judicial Department for use in the Courts of Colorado

| | |
|---|---|
| District Court, Arapahoe County, Colorado<br>7325 South Potomac Street<br>Centennial, CO 80112<br><br>Plaintiff: Ralph E. Machesky<br><br>v.<br><br>Defendants: National Consumer Telecom & Utilities Exchange, Inc, and Equifax Information Services, LLC. | **COURT USE ONLY** |
| Attorney for Plaintiff:<br>Matthew R. Osborne #40835<br>11178 Huron Street, Suite 7<br>Northglenn, CO 80234<br>Phone Number: 303-759-7018<br>E-mail: matt@mrosbornelawpc.com | Case Number:<br><br><br><br>Division:     Courtroom: |

## COMPLAINT

1. This court has jurisdiction in this matter pursuant to 28 USC § 1331 and the Fair Credit Reporting Act, 15 U.S.C. 1681, et seq.

2. Plaintiff is an individual consumer who resides in Littleton, CO.

3. Equifax Information Services, LLC ("Equifax") is a consumer reporting agency headquartered in Atlanta, GA.

4. National Consumer Telecom & Utilities Exchange, Inc (NCTUE) is ostensibly a corporation; however, it does not appear to be registered with any state Secretary of State, and it does not have any employees.

5. NCTUE was formed by several telecommunications magnates such as AT&T, Comcast, and Sprint to name a few. The NCTUE's stated purpose is "Telecommunications, pay TV and utility companies write off billions of dollars in bad debt each year. To reduce this financial risk, proactive industry leaders have

collaborated to form a national exchange, NCTUE, whose members directly benefit
from identifying high-risk consumers during the account acquisition process."

6. With over 420 million records in the database, NCTUE is the premier, industry-
specific data source for accurately assessing new applicant risk. NCTUE allows
members to screen new consumers for customer service applications and unpaid
closed accounts to decrease write-offs and improve profitability.

7. By joining NCTUE, members can:

- Identify whether or not a new applicant has outstanding, unpaid balances
resulting in unpaid closed accounts from other member companies

- Gain insight into fraudulent new applications containing duplicate or invalid
Social Security numbers

- Access unique, industry-specific data sources to accurately determine
deposits

- Access updated address information from other members to greatly improve
skip tracing and collections results

- Receive management reports to view aging of unpaid closed accounts,
payment profiles, account reviews, activity analysis and more

8. Although results vary, members may see a potential 25% lift in loss mitigation by
joining NCTUE. Members also receive updates with new phone numbers and
address information for a high percentage of their outstanding, unpaid closed
accounts.

9. Membership in NCTUE® is open to any telecommunications company (as defined
by the Telecommunications Act of 1996) with residential accounts and any pay TV or

utility company with consumer accounts. Members include national, regional and local companies that provide: Cable TV service, Electric service, Gas service, Home security service, Internet service, Local phone service, Long distance phone service, Satellite TV service, Water service, and Wireless phone service.

10. Potential and existing creditors can obtain a NCTUE report on a consumer, which contains the consumer's payment history on utility specific accounts.  Additionally, the NCTUE consumer reports also come with a credit score called an "Exchange Risk Score", which is similar to a FICO score, but only for utility users.  Thus, the NCTUE report easily meets the FCRA's definition of "consumer report" as defined in 15 U.S.C. § 1681a, because it bears on the consumer's reputation or creditworthiness, and it is used for the consumer's personal utilities such as home phones, cell phones, and other household utilities.

11. NCTUE concedes on its website that it is governed by the FCRA:  "Our mission is to serve as an FCRA-compliant credit data exchange service for the telecommunication, payTV and utility industries by submitting industry-specific payment information to enable members of the exchange to better identify and manage financial risks and to better monitor customer relationships during the life of the service affiliation."

12. Because NCTUE does not have any employees or physical locations, NCTUE outsources all of its FCRA related duties to Equifax.

13. In August 2019, Plaintiff requested a copy of his NCTUE report, and Defendant Equifax requested proof of Plaintiff's SSN and address, which Plaintiff provided.

14. On or around August 13, 2019, Plaintiff obtained a copy of his NCTUE report from Equifax, and noticed that there was an AT&T account reporting false derogatory information. More specifically, the AT&T account was showing that the status was 60 – 90 days late, and that the account had been delinquent since March 2019.

15. In reality, Plaintiff canceled his service with AT&T in February 2019 and paid the final bill over the phone in March 2019, which was a recorded phone conversation and Plaintiff was told that he would not owe AT&T any money after making the final payment.

16. In connection with the August 13, 2019 report, Equifax attached a form entitled "Research Request Form", which was described by Equifax as the form to use to dispute any information that Plaintiff found to be inaccurate on the NCTUE report. The form had Plaintiff's name, address, SSN, and confirmation number pre-populated on the form already.

17. Plaintiff filled out the "Research Request Form" and mailed it back to Defendant at the address identified at the top of the research request form.  Plaintiff did not receive the results of any reinvestigation to this dispute.

18. In November 2019, Plaintiff sent another dispute to of the AT&T account on his NCTUE report to Defendant at the address identified on the NCTUE report as the address where to send disputes to.

19. Plaintiff received a response back from Equifax stating "the disputed information is not currently being reported on your Equifax credit file." However, the inaccurate AT&T account is being reported on the NCTUE file, not the Equifax file, and so this was a totally insufficient response because Equifax essentially reinvestigated the

wrong database.  Equifax investigated its normal credit database, ACRO, instead of the NCTUE database, which is the one at issue here.

20. As of the date of the filing of this complaint, Plaintiff has not received the results of any reinvestigation into his dispute as required by the FCRA.

21. NCTUE is essentially a shell company operated by Equifax and other telecom moguls.  Although NCTUE maintains data on millions of Colorado residents, and provides data about Colorado residents to its comrades, NCTUE is not even registered with the Colorado Secretary of State in violation of Colorado law.   It has no place to be served, nor does it have any physical locations.

22. NCTUE is the brainchild of Bill Brito, an Equifax vice president.  Brito thought that it would be profitable for Equifax to control how utility accounts, including phone and cable TV providers, are sold in connection with credit transactions.

23. The same day that NCTUE was created, Equifax announced that it was "awarded a $20 Million – Five-Year Contract."

24.  Equifax would get to charge NCTUE members a fee for the right to review the utility credit scores of consumers and other information.

25. Equifax would house, update, control, and sell all NCTUE member data.  In 2017, this arrangement with NCTUE resulted in approximately $27 million in revenues to Equifax, stemming from fees paid by members directly to Equifax.

26. Under this arrangement, Equifax has agreed to handle all NCTUE consumer disputes and consumer requests for their files.  Equifax also warehouses NCTUE's data.

27. However, NCTUE pays nothing to Equifax for providing these consumer-related services. In fact, in recent years, it is Equifax that pays NCTUE $400,000 per year for "administrative expenses" and to fund the activities of NCTUE's Board of Directors.

28. NCTUE's board has had several meetings in recent years funded by Equifax in locations such as Los Angeles, Nashville, New Orleans, and San Francisco.

29. Equifax has also agreed to indemnify NCTUE in case of liability for its activities, including any liability in this case.

30. NCTUE agrees that it is regulated by the FCRA and that it is responsible for what Equifax does, or does not do, on its behalf.

31. NCTUE understands what reinvestigation under FCRA section 1681i requires.

32. NCTUE knows that it should have reinvestigated Plaintiff's disputes, but that it did not.

33. The reason that Plaintiff's disputes were not reinvestigated is due to problems in the mailroom losing certified mail. The address that NCTUE has designated as the dispute address, actually belongs to Equifax, and there is no procedure in place to distinguish disputes intended for NCTUE vs. disputes intended for Equifax. This is why the response to Plaintiff's 2nd dispute stated that the AT&T account was not on his Equifax credit file – there was no procedure in place for the mailroom to route the dispute to NCTUE instead of the usual Equifax channels. Thus, the person who looked into the dispute, looked at the wrong database, which was not a human error, and was instead caused by non-existent policies.

34. NCTUE has had long standing problems with its mailroom since at least 2014.
    NCTUE was sued by a consumer named Cynthia Todd from California, who alleged
    that she made disputes to NCTUE via certified mail, which went unanswered.

35. NCTUE has no meaningful procedures of any sort to monitor Equifax.

36. In spite of all these problems with the mailroom, NCTUE has never even considered
    a separate corporate partner other than Equifax, and in fact recently renewed its
    commitment to Equifax until at least 2020.

37. In fact, Equifax will probably provide its own lawyers, King & Spalding, LLP, to
    NCTUE to represent them in this case, and undoubtedly Equifax will foot the bill.

38. NCTUE was the subject of a class action back in 2017, called Blewett v NCTUE,
    whereby the lead plaintiffs made similar allegations as Plaintiff makes in this case
    about disputes not being reinvestigated at all. And still, nothing has changed since
    then.

39. To this day, correspondence sent to NCTUE and Equifax arrives at the same post
    office and gets processed in the same mailroom.

40. Equifax and NCTUE hire a vendor, Canon, to be its mailroom vendor. On an
    average day, Canon brings several employees and a cargo van to the post office.
    The volume of disputes is so high that the post office cannot even process them,
    and then Canon employees must sort them at the post office. Each day, the Cargo
    van is filled with about 10,000 disputes after sorting.

41. Pursuant to instructions from Equifax, Canon co-mingled the dispute letters intended
    for NCTUE with the ones intended for Equifax.

42. NCTUE has turned a blind eye to Equifax's actions, likely due to the fact that NCTUE is essentially a shell company, and Equifax funds the NCTUE Board of Directors with lavish meetings, retreats, and other "administrative expenses."

43. Even after the previous lawsuits on these issues, NCTUE still does not supervise Equifax in any way, nor have they asked Equifax to get to the bottom of the problem of not reinvestigating disputes due to misrouting mailroom problems.

## COUNT I, Fair Credit Reporting Act

44. Plaintiff realleges and incorporates the above paragraphs as if fully set out herein.

45. Defendants willfully and negligently violated the FCRA, 15 U.S.C. § 1681i, in the following ways: failing to notify the data furnisher, AT&T, of the dispute; failing to review and consider all relevant information provided by Plaintiff as part of dispute; failing to perform a reasonable reinvestigation into Plaintiff's dispute; and failing to notify Plaintiff of the results of the reinvestigation.

46. Defendant's violations of the FCRA caused Plaintiff actual damages in the form of emotional distress, harm to credit rating, and inconvenience.

47. Equifax is liable for NCTUE's conduct in this case as an alter ego. NCTUE is used as cloak to disguise the fact that Equifax is actually the man behind the curtains pulling all the strings. NCTUE is not registered to conduct business in any state, it has no place it can be served with process, it has no physical locations, it has no employees, NCTUE is operates as a "non-profit" company with little to no income, even though Equifax makes ~$27 million per year by running the NCTUE database, and Equifax actually pays NCTUE to run the database. Meanwhile, NCTUE's Board

of Directors are filled with various key players from the telecom industries, and
Equifax funds their lavish meetings, which are a cover story to create an illusion that
it engages in traditional corporate meetings.  NCTUE owns no assets, it is
undercapitalized in order to pass off as a non-profit, and also to avoid a major
punitive damages award.   As a practical matter, Equifax has to indemnify NCTUE
for this case, and any jury verdict entered, in addition to Equifax paying for NCTUE's
lawyers.   In sum, Equifax has used NCTUE as a façade to pursue its own business
interests by creating a specialty credit reporting agency for utility companies.

WHEREFORE, Plaintiff prays for the following relief:

   a.  Actual damages to be determined at trial;
   b.  Punitive damages to be determined at trial;
   c.  Attorney Fees and costs if Plaintiff is the prevailing party at trial;
   d.  For such other relief as may be proper.

s/ Matthew R. Osborne
*Attorney for Plaintiff*

**PLAINTIFF DEMANDS TRIAL BY JURY**