UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Number 1:20-cv-00221-RBJ

RALPH E. MACHESKY,
    Plaintiff,

v.

NATIONAL CONSUMER TELECOM & UTILITIES
EXCHANGE, INC., and EQUIFAX INFORMATION
SERVICES, LLC,
    Defendants.

## AMENDED COMPLAINT

1. This court has jurisdiction in this matter pursuant to 28 USC § 1331 and the Fair Credit Reporting Act, 15 U.S.C. 1681, et seq.

2. Plaintiff is an individual consumer who resides in Littleton, CO.

3. Equifax Information Services, LLC ("Equifax") is a consumer reporting agency headquartered in Atlanta, GA.

4. National Consumer Telecom & Utilities Exchange, Inc. (NCTUE) is ostensibly a corporation; however, it does not appear to be registered with any state Secretary of State, and it does not have any employees.

5. NCTUE was formed by several telecommunications magnates such as AT&T, Comcast, and Sprint NCTUE's stated purpose is "Telecommunications, pay TV and utility companies write off billions of dollars in bad debt each year. To reduce this financial risk, proactive industry leaders have collaborated to form a national exchange, NCTUE, whose members directly benefit from identifying high-risk consumers during the account acquisition process."

6. With over 420 million records in the database, NCTUE is the premier, industry-specific data source for accurately assessing new applicant risk. NCTUE allows members to screen new consumers for customer service applications and unpaid closed accounts to decrease write-offs and improve profitability.

7. By joining NCTUE, members can:

    - Identify whether or not a new applicant has outstanding, unpaid balances resulting in unpaid closed accounts from other member companies
    - Gain insight into fraudulent new applications containing duplicate or invalid Social Security numbers
    - Access unique, industry-specific data sources to accurately determine deposits
    - Access updated address information from other members to greatly improve skip tracing and collections results
    - Receive management reports to view aging of unpaid closed accounts, payment profiles, account reviews, activity analysis and more

8. Although results vary, members may see a potential 25% lift in loss mitigation by joining NCTUE. Members also receive updates with new phone numbers and address information for a high percentage of their outstanding, unpaid closed accounts.

9. Membership in NCTUE® is open to any telecommunications company (as defined by the Telecommunications Act of 1996) with residential accounts and any pay TV or utility company with consumer accounts. Members include national, regional and local companies that provide: Cable TV service, Electric service, Gas service, Home security service, Internet service, Local phone service, Long distance phone service, Satellite TV service, Water service, and Wireless phone service.

10. Potential and existing creditors can obtain a NCTUE report on a consumer, which contains the consumer's payment history on utility specific accounts.  Additionally, the NCTUE consumer reports also come with a credit score called an "Exchange Risk Score", which is similar to a FICO score, but only for utility users.  Thus, the NCTUE report easily meets the FCRA's definition of "consumer report" as defined in 15 U.S.C. § 1681a, because it bears on the consumer's reputation or creditworthiness, and it is used for the consumer's personal utilities such as home phones, cell phones, and other household utilities.

11. NCTUE concedes on its website that it is governed by the FCRA:  "Our mission is to serve as an FCRA-compliant credit data exchange service for the telecommunication, payTV and utility industries by submitting industry-specific payment information to enable members of the exchange to better identify and manage financial risks and to better monitor customer relationships during the life of the service affiliation."

12. Because NCTUE does not have any employees or physical locations, NCTUE outsources all of its FCRA related duties to Equifax.

13. In August 2019, Plaintiff requested his NCTUE report. Plaintiff was asked to provide proof of Plaintiff's social security number and address, which Plaintiff provided.

14. On or around August 13, 2019, NCTUE sent Plaintiff his NCTUE report. The report contained inaccurate information regarding his AT&T account, including reporting that the account had a current balance of $217.16, the status was 61 – 90 days past due, and that the account had been delinquent since March 21, 2019.

15. In reality, Plaintiff had canceled his service with AT&T in early 2019, and paid the final bill by telephone on or about March 5, 2019, at which time AT&T told him that the account was closed with a zero balance.

16. Attached to the August 13, 2019 NCTUE report, was a form entitled "Research Request Form", which was described as the form to use to dispute any information that Plaintiff found to be inaccurate on the NCTUE report. The form had Plaintiff's name, address, SSN, and confirmation number on the form already.

17. Plaintiff filled out the "Research Request Form" informing NCTUE that the account had been paid in full and asking that NCTUE remove the false information.  He mailed the form, along with a copy of his social security card, to NCTUE at the address identified at the top of the research request form.  NCTUE did not respond or send Plaintiff results of any reinvestigation to this dispute.

18. Plaintiff received a letter from Equifax dated August 28, 2019, stating: "We have received your request concerning inaccurate information on your Equifax credit file."  This letter was confusing because Plaintiff had not sent a dispute to Equifax about inaccurate information on his Equifax credit file; he had sent a dispute to NCTUE about inaccurate information on his NCTUE report. The Equifax letter also stated that Equifax could not locate a credit file in its database with the identification information he had provided.  That was not true.

19. In November 2019, Plaintiff sent another dispute of the AT&T account on his NCTUE report to NCTUE at the address identified on the NCTUE report as the address to which to send disputes. Plaintiff sent a letter and the same Research Request Form. In the letter, he told NCTUE that the account had been closed and paid in full in March 2019.  His letter included a copy of the section of his NCTUE report with the AT&T account information he was disputing. He told NCTUE: "Please correct this - the account should have a $0 balance and should not be reported as 60-90 days late or delinquent in any way."

20. Plaintiff received a response to his dispute from Equifax rather than from NCTUE to whom he made the dispute about the AT&T account information that NCTUE was reporting. The Equifax response stated that "the disputed item is not currently being reported on your Equifax credit file." However, the inaccurate AT&T account Plaintiff had disputed was being reported on the NCTUE file, not the Equifax file. This response showed that Equifax had reinvestigated the wrong database. Equifax reinvestigated its credit database, which Plaintiff had not disputed and which did not contain the inaccurate AT&T account information, rather than reinvestigating the NCTUE database, which is the database containing the inaccurate AT&T account information Plaintiff disputed.

21. Plaintiff has never received results of any reinvestigation into his dispute of the inaccurate information in his NCTUE file as required by the FCRA.

22. NCTUE also failed to provide Plaintiff with identification of each person that procured a consumer report about him in the previous year, as required by FCRA Section 1681g(a)(3), when it provided him with his report dated August 13, 2019 and failed to identify DISH.

23. NCTUE is essentially a shell company operated by Equifax and other telecom moguls. Although NCTUE maintains data on millions of Colorado residents, and provides data about Colorado residents to its comrades, NCTUE is not registered with the Colorado Secretary of State in violation of Colorado law.   It has no place to be served, nor any physical locations.

24. NCTUE is the brainchild of Bill Brito, an Equifax vice president.  Brito thought that it would be profitable for Equifax to control how utility accounts, including phone and cable TV providers, are sold in connection with credit transactions.

25. The same day that NCTUE was created, Equifax announced that it was "awarded a $20 Million – Five-Year Contract."

26. Equifax would get to charge NCTUE members a fee for the right to review the utility credit scores of consumers and other information.

27. Equifax would house, update, control, and sell all NCTUE member data. In 2017, this arrangement with NCTUE resulted in approximately $27 million in revenues to Equifax, stemming from fees paid by members directly to Equifax.

28. Under this arrangement, Equifax has agreed to handle all NCTUE consumer disputes and consumer requests for their files. Equifax also warehouses NCTUE's data.

29. However, NCTUE pays nothing to Equifax for providing these consumer-related services. In fact, in recent years, it is Equifax that pays NCTUE $400,000 per year for "administrative expenses" and to fund the activities of NCTUE's Board of Directors.

30. NCTUE's board has had several meetings in recent years funded by Equifax in locations such as Los Angeles, Nashville, New Orleans, and San Francisco.

31. Equifax has also agreed to indemnify NCTUE in case of liability for its activities, including any liability in this case.

32. NCTUE agrees that it is regulated by the FCRA and that it is responsible for what Equifax does, or does not do, on its behalf.

33. NCTUE understands what reinvestigation under FCRA section 1681i requires.

34. NCTUE knows that it should have reinvestigated Plaintiff's disputes, but that it did not.

35. The reason that Plaintiff's disputes were not reinvestigated is due to problems in the mailroom misrouting mail. The address that NCTUE has designated as the dispute address, actually belongs to Equifax. There is no procedure in place to distinguish disputes intended for NCTUE from disputes intended for Equifax. This is why the response to Plaintiff's second dispute stated that the AT&T account was not on his Equifax credit file – there was

no procedure in place for the mailroom to route the dispute to NCTUE instead of the usual Equifax channels.  Thus, the person who handled the dispute, looked at the wrong database, which was not a human error, and was instead caused by non-existent policies.

36. NCTUE has had long standing problems with its mailroom since at least 2014.  NCTUE was sued by a consumer named Cynthia Todd from California, who alleged that she made disputes to NCTUE via certified mail, which were not reinvestigated.

37. NCTUE was the subject of a class action back in 2017, called Blewett v. NCTUE, whereby the lead plaintiffs made similar allegations as Plaintiff makes in this case about disputes not being reinvestigate at all. And still, nothing case changed since then.

38. NCTUE has no meaningful procedures of any sort to monitor Equifax.

39. In spite of all these problems with the mailroom, NCTUE has never even considered a separate corporate partner other than Equifax, and recently renewed its commitment to Equifax until at least 2020.

40. In fact, Equifax will probably provide its own lawyers, King & Spalding, LLP, to NCTUE to represent them in this case, and undoubtedly Equifax will foot the bill.

41. To this day, correspondence sent to NCTUE and Equifax arrives at the same post office and gets processed in the same mailroom.

42. Equifax and NCTUE hire a vendor, Canon, to be its mailroom vendor.  On an average day, Canon brings several employees and a cargo van to the post office.  The volume of disputes is so high that the post office cannot even process them, and then Canon employees must sort them at the post office.  Each day, the van is filled with about 10,000 disputes after sorting.

43. Pursuant to instructions from Equifax, Canon co-mingled the dispute letters intended for NCTUE with the ones intended for Equifax.

44. NCTUE has turned a blind eye to Equifax's actions, likely due to the fact that NCTUE is essentially a shell company, and Equifax funds the NCTUE Board of Directors with lavish meetings, retreats, and other "administrative expenses."

45. Even after the previous lawsuits on these issues, NCTUE still does not supervise Equifax in any way, nor have they asked Equifax to get to the bottom of the problem of not reinvestigating disputes due to misrouting mailroom problems.

## COUNT I, Fair Credit Reporting Act

46. Plaintiff realleges and incorporates the above paragraphs as if fully set out herein.

47. Defendants willfully and negligently violated the FCRA, 15 U.S.C. § 1681i(a), in the following ways: failing to reasonably reinvestigate Plaintiff's disputes; failing to notify the data furnisher, AT&T, of the disputes; failing to provide AT&T with all relevant information provided by Plaintiff; failing to review and consider all relevant information provided by Plaintiff; failing to delete disputed information that it did not verify as accurate; and failing to provide Plaintiff with written results of the reinvestigation.

48. Defendants negligently and willfully violated the FCRA, 15 U.S.C. § 1681g(a) by failing to identify each person that procured a consumer report about him in the previous year.

49. Defendants' violations of the FCRA caused Plaintiff actual damages, including emotional distress, damage to reputation, invasion of privacy, harm to creditworthiness, and interference with his normal and usual activities.

50. Equifax is liable for NCTUE's conduct as an alter ego.  NCTUE is used as a cloak to disguise the fact that Equifax is actually the man behind the curtains pulling all the strings. NCTUE is not registered to conduct business in any state, it has no place it can be served

with process, has no physical locations, and has no employees. NCTUE operates as a "non-profit" company with little to no income, even though Equifax makes ~$27 million per year by running the NCTUE database, and Equifax actually pays NCTUE to run the database. NCTUE's Board of Directors is filled with key players from the telecom industries. Equifax funds their lavish meetings, which are a cover to create an illusion that it conducts traditional corporate meetings. NCTUE owns no assets; it is undercapitalized to pass as a non-profit, and also to avoid a major punitive damages award. As a practical matter, Equifax has to indemnify NCTUE for this case, and any jury verdict entered, in addition to Equifax paying for NCTUE's lawyers. In sum, Equifax has used NCTUE as a façade to pursue its own business interests by creating a specialty credit reporting agency for utility companies.

**PLAINTIFF DEMANDS TRIAL BY JURY**

WHEREFORE, Plaintiff prays for the following relief:

a. Actual damages to be determined at trial;
b. Punitive damages to be determined at trial;
c. Attorney Fees and costs if Plaintiff is the prevailing party at trial;
d. For such other relief as may be proper.

s/ Matthew R. Osborne
Matthew R. Osborne, #40835
11178 Huron St., Suite 7
Northglenn, CO 80234
(303) 759-7018
matt@mrosbornelawpc.com

Robert S. Sola
1500 SW First Avenue, Suite 800
Portland, Oregon 97201
(503) 295-6880
rssola@msn.com

*Attorneys for Plaintiff*